UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELLEN GRANT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-2616** |
| **ST. JOHN THE BAPTIST PARISH SCHOOL BOARD** | **SECTION "O"** |

<u>**ORDER AND REASONS**</u>

Before the Court is a Rule 12(b)(6) motion[1] to dismiss filed by Defendant St. John the Baptist Parish School Board ("the School Board"). The School Board seeks to dismiss the claims asserted by Plaintiff Ellen Grant in her Complaint.[2] Grant brings claims for racial and disability discrimination under Title VII, Section 1981, the Americans with Disabilities Act, and the Louisiana Employment Discrimination Law. For the following reasons, Defendant's motion to dismiss is **GRANTED**.

## I.    BACKGROUND

This case arises from Plaintiff Ellen Grant's claim that she experienced racial and disability discrimination at the hands of her employer, the St. John the Baptist Parish School Board. Grant, an African American woman, works as a social worker for the School Board and alleges she was paid substantially less than other social workers, including three Caucasian female co-workers. She also alleges she experienced other unfair treatment, including withholding of benefits and a heavier workload than her colleagues. The Court accepts all well-pleaded allegations as true

---

[1] ECF No. 8.
[2] ECF No. 1.

for purposes of this Rule 12(b)(6) motion. *See Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

Grant was hired as a social worker by the School Board in September of 1999. She is currently assigned to the St. John Alternative Program School in LaPlace, Louisiana. Grant's first line supervisor is the St. John Alternative Program Administrator. Corey Lambert served in this position from June 2023. Cleo Perry has served as the School Board's superintendent since January 2024.[3]

As compared to other social workers, Grant was required to carry the heaviest caseload in the district. In addition to servicing all students at the St. John Alternative Program School, Grant's roster includes students at several other campuses, which requires her to travel to the other schools. By contrast, Cindy Graham—a Caucasian social worker—serviced students at only two campuses before her retirement. After Graham's retirement, those students were transferred to Grant's roster without any prior communication that Grant would now be responsible for these students.[4]

From December 2021 through March 2022, Grant's first line supervisor at the time, Robert Schaff, assigned Grant duties as a counselor in addition to her duties as a social worker. Grant was the only social worker in the district who was also required to act as a counselor. When Grant complained to Schaff about the unequal treatment,

---

[3] ECF No. 1 ¶¶15-19.
[4] *Id.* ¶ 20.

Schaff failed to take any action to assist Grant.[5] In February 2022, Schaff denied Grant's request for stipends and duty pay.[6] The Director of HR similarly failed to act on any of Grant's complaints about the unequal workload.[7]

In March 2022, Grant was injured by two female students fighting and needed to undergo multiple surgeries. Grant was on medical leave from March 2022 through January 25, 2023, while recovering from the surgeries caused by the injury. Throughout her medical leave, Grant continued to email HR and the Superintendent with her complaints of unequal pay. On August 9, 2022, Interim Superintendent Johnson denied Grant's request to adjust her pay.[8]

In January 2023, Payroll Clerk Donna Duhe changed Grant's leave coding from assault/battery by a student to physical contact with a student. According to the district policy, employees who are injured while acting in their official capacity because of assault/battery by a student receive assault/battery leave as defined under L.A. R.S. 17:1201(C) without reduction in pay or benefits. The change in leave coding for Grant's medical leave forced her to exhaust all sick leave. Her retirement contributions ended and she was required to pay insurance premiums. [9] Grant filed a workman's compensation claim in response to the issue with coding her leave. She discovered that while she was out on leave, the HR department of the School Board

---

[5] *Id.* ¶ 22-23.
[6] *Id.* ¶ 25.
[7] *Id.* ¶¶ 24-26.
[8] *Id.* ¶¶ 27-31.
[9] *Id.* ¶¶ 33-36.

falsified a statement indicating the Board had offered Grant light duty work, which had not happened.[10]

Less than a week after Grant returned from medical leave, Schaff (who was no longer Grant's direct supervisor) assigned Grant almost 100 students to service, eighty of whom were high need/at risk, and fifteen of whom were special needs students who had not been given any services for the six months prior. Grant also discovered that Schaff had failed to assign any other social worker to provide services for students previously assigned to Grant while she was out on medical leave.[11] Throughout February 2023, although he was not her supervisor, Schaff continued to assign work to Grant, including work that fell outside Grant's job description and was not required of any other social workers. Grant's emails to HR about the disparity went unanswered.[12]

On April 17, 2023, a male student injured Grant's hand jumping in and out of a classroom window. Grant was not able to return to work until a nerve conduction study was completed. While she was on medical leave, Schaff allegedly informed the male student and his mother that he would attempt to get Grant fired. In October 2023, Schaff emailed Dr. Spies, Director of Special Education, stating the student had not injured Grant.[13]

---

[10] *Id.* ¶¶ 35-38.
[11] *Id.* ¶¶ 39-41.
[12] *Id.* ¶¶ 42-43.
[13] *Id.* ¶ 44. The Complaint reads, "In October 2023, Mr. Schaff falsified a statement in an email to Dr. Spies, Director of Special Education, stating that he did not JB injured Mrs. Grant."

Grant was cleared to return to work on June 2, 2023. Once again, the district had not placed her on medical leave for assault. On July 25, 2023, Grant emailed Dr. Curt Green, the HR Director, incident details from the April 17, 2023, assault by the student. Grant's email included a video showing the student attempting to leave the classroom and a photo where the student had jumped in and out of the window. Dr. Green stated that the superintendent must address her complaints. Grant continued to send emails to the superintendent, the interim superintendent, and new HR director but never received a reply.[14]

Schaff was transferred out of his position in April 2024. Grant alleges that numerous grievances were filed against Schaff in 2023 and 2024.[15]

On July 7, 2023, Grant filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On August 8, 2024, Grant received the Notice of Right to Sue letter from the Department of Justice for her Title VII, ADA and retaliation claims included in her Charge of Discrimination.[16]

According to Grant, she suffered racial discrimination as she was required to work more and was paid less than her Caucasian female coworkers. She also alleges she suffered retaliation by employees at the School Board for her complaints of discriminatory treatment. Finally, she also alleges that she is a qualified individual

---

[14] *Id.* ¶¶ 45-47.
[15] *Id.* ¶¶ 49-50.
[16] *Id.* ¶ 9.

5

with a disability within the meaning of the ADA due to her onsite job injuries to her hand and was discriminated against due to her disability.

## II.   LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint that does not meet Rule 8(a)(2)'s pleading standard should be dismissed for failing to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitations of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When considering a Rule 12(b)(6) motion to dismiss, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 502 (5th Cir. 2014) (citation omitted). The Court "need not, however, accept the plaintiff's legal conclusions as true." *Id.* at 502-03; *see also Iqbal*, 556 U.S. at 678 ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.").

6

Ultimately, "[t]o survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although '[courts] accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

## III.    ANALYSIS

Grant asserts claims under (1) Title VII, 42 U.S.C. § 2000e-2(a) for disparate treatment of unequal pay because of her race; (2) 42 U.S.C. § 1981 via § 1983 for unequal pay and racial discrimination;[17] (3) Title VII, 42 U.S.C. § 2000e-2(a) for retaliation; (4) the Americans with Disabilities Act, 42 U.S.C. § 121101, *et seq.* (the "ADA") for disability discrimination; and (5) the Louisiana Employment Discrimination Law (the "LEDL") based on Disability, LA. R.S. § 23:301, *et seq.*

---

[17] Grant brings racial discrimination claims under both 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. Both statutes prohibit racial discrimination in employment. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 455-57 (2008). They differ, however, in their procedural requirements and pleading standards. *See Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 325 (5th Cir. 2020). The Court will first address Grant's Title VII racial discrimination claim before turning to the Section 1981 claim.

7

### A. Title VII – Disparate Treatment Claim

#### i.    Claims of Pay Disparity Are Not Time-Barred

The Court first considers whether Grant is procedurally barred from asserting her Title VII claims. A private plaintiff suing under Title VII must exhaust her administrative remedies by timely filing a charge with the EEOC and receiving a right-to-sue notice before seeking relief from the Court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002); 42 U.S.C. § 2000e–5(f)(1).

Under 42 U.S.C. § 2000e–5(e), a plaintiff must file an EEOC charge within 180 days after the allegedly unlawful employment practice. That period is extended to 300 days if "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice." 42 U.S.C. § 2000e–5(e).

The Louisiana Commission on Human Rights has authority to remedy employment discrimination, rendering Louisiana a "deferral" state. *See* La. Rev. Stat. Ann. § 51:2231, *et seq*. When a claimant submits an EEOC charge in a deferral state, "the claimant is deemed to have initially instituted proceedings with the state agency and the 300–day period is triggered." *Conner v. Louisiana Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007) (citations omitted). Accordingly, when a claimant submits an EEOC charge in Louisiana, the plaintiff's charge of discrimination must be filed within 300 days of the alleged discriminatory act. A charge is deemed filed with the EEOC "upon receipt of the document." 29 C.F.R. §

8

1601.13(a)(4)(ii)(A); *see Cargo v. Kansas City Southern*, 2009 WL 3012760, at *1–2 (W.D. La. 2009).

Here, Grant filed her EEOC charge on July 7, 2023. She received her notice of right to sue letter from the Department of Justice for her Title VII claims on August 8, 2024.[18] The parties agree that under the 300-day limitations period, any alleged retaliatory acts under Title VII that Grant experienced before September 10, 2022 fall outside the actionable window and are time-barred.[19]

As Grant points out, however, when it comes to claims of unequal pay, the Lilly Ledbetter Fair Pay Act of 2009 amended Title VII to restart the statute of limitations with each discriminatory pay period. *See* 42 U.S.C. § 2000e-5(e)(3)(A). The Ledbetter Act "makes each paycheck at an allegedly discriminatory rate a separate, discrete act of discrimination, effectively resetting the statute of limitations for filing an EEOC charge." *Niwayama v. Texas Tech Univ.*, 590 F. App'x 351, 356 (5th Cir. 2014). The Act allows a plaintiff to recover "back pay for up to two years preceding the filing of the charge," provided that the "unlawful employment practices" that occurred during the filing period are "similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge." *Id.* (quoting 42 U.S.C. § 2000e–5(e)(3)(B)).

---

[18] ECF No. 1 ¶ 9.
[19] ECF No. 14 at 3 (Pl. Opp.); ECF No. 15 at 1-2 (Def. Reply).

The thrust of Grant's Title VII disparate treatment claim is that she was "paid less than her colleagues in violation of the pay scale" and "required to cover a heavier workload" than her Caucasian colleagues without compensation for those additional responsibilities.[20] Grant alleges that her discriminatory pay disparity persisted through the relevant period and was never corrected.[21] Accordingly, the Court will consider Grant's allegations of unequal pay for the work performed throughout the time period alleged.

### ii. Grant Fails to Plead a Title VII Disparate Treatment Claim

Grant brings a disparate treatment claim for unequal pay under Title VII. Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1). Disparate-treatment discrimination "addresses employment actions that treat an employee worse than others based on the employee's race . . . In such disparate-treatment cases, proof and finding of discriminatory motive is required." *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). There are "two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* her protected status.'" *Cicalese v. Univ. of Texas*

---

[20] ECF No. 1 ¶ 58.
[21] *Id.* ¶¶ 24, 30-31.

*Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (citation omitted) (emphasis in original); *Pacheco*, 448 F.3d at 787 (a "discriminatory motive is required" for disparate treatment claims). Plaintiffs can ultimately prove discriminatory motive through direct or circumstantial evidence. *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994).

The School Board argues that Grant's Complaint should be dismissed because she fails to allege facts sufficient to infer that she was treated less favorably than similarly situated Caucasian employees, and thus, fails to allege that she was discriminated against due to her race. In response, Grant distinguishes the School Board's chief case[22] by pointing out that it was decided at the summary judgment stage, where the *McDonnell Douglas*[23] burden-shifting framework requires plaintiffs who lack direct evidence of discrimination to establish a *prima facie* case of discrimination using circumstantial evidence. According to Grant, the School Board inappropriately heightens the pleading standard at the motion-to-dismiss stage, which does not require a plaintiff to prove a *prima facie* case.

It is true that the Fifth Circuit has held that a district court errs by "requiring a plaintiff to plead something more than the 'ultimate elements' of a claim." *Cicalese*, 924 F.3d at 767 (citation omitted). In fact, "[a] court . . . inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or

---

[22] *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315 (5th Cir. 2021).
[23] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

11

evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss." *Id.* But "the prima facie standard nonetheless has some relevance at the motion-to-dismiss stage." *Besser v. Texas Gen. Land Off.*, 834 F. App'x 876, 881 (5th Cir. 2020) (cleaned up). In ruling on a motion to dismiss, the Court will not conduct a "rigorous factual or evidentiary analysis," but it can use the *prima facie* standard as a tool to discern whether a plaintiff relying on circumstantial evidence "has plausibly alleged the ultimate elements of the disparate treatment claim." *Cicalese*, 924 F.3d at 767.

Under this standard, the Court finds that Grant has failed to adequately allege the ultimate elements of a disparate treatment claim of unequal pay. Again, a disparate treatment claim requires pleading "(1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* her protected status.'" *Id.* (emphasis in original) (citation omitted); *see also Raj v. Louisiana State Univ.*, 714 F.3d 322, 326, 331 (5th Cir. 2013) (plaintiff must plead sufficient "facts, direct or circumstantial, that would suggest [the employer's] actions were based on [the plaintiff's] race . . . or that [the employer] treated similarly situated employees of other races . . . more favorably."). And a "prima facie case of wage discrimination under Title VII requires a plaintiff to show that [she] was a member of a protected class and that [she] was paid less than a non-member for work requiring substantially the same responsibility." *Rodriguez v. City of Corpus Christi*, 129 F.4th 890, 899 (5th Cir. 2025) (emphasis in original) (citation omitted).

12

Here, Grant falls short of pleading that her allegedly unequal pay as compared to her Caucasian colleagues was "because of" her race. *Cicalese*, 924 F.3d at 767. While Grant cites numerous facially unfair actions undertaken against her by her supervisor, Schaff, she fails to allege facts permitting an inference that Schaff (or anyone else at the School Board) was motivated to discriminate against her *due to* her race. Grant relies on identifying three Caucasian colleagues—also social workers with the School Board—who were allegedly paid more despite having lower caseloads than Grant.[24] But Grant fails to allege that these colleagues were in fact similarly situated to her—other than in sharing the title "social worker"—which dooms her Complaint as currently pleaded. That is because salaries can differ among workers with the same job title due to factors such as types of job responsibilities, experience, or tenure with the employer (indeed, at least one of the named comparators "recently retired," suggesting a longer tenure with the School Board than Grant).[25] Without allegations that the comparator employees were "similarly situated" to Grant, the Court cannot automatically infer that any pay disparities as compared to her Caucasian colleagues existed *because of* race. *See Montgomery v. Clayton Homes Inc.*, 65 F. App'x 508 (5th Cir. 2003) (explaining that in an unequal pay claim under Title VII "job content and actual job requirements, not the job title, classification or description, are determinative"); *Rodriguez*, 129 F.4th at 899 (for a prima facie case

---

[24] ECF No. 1 ¶¶ 19-20.
[25] *Id.* ¶ 20.

13

of wage discrimination, a plaintiff will need to show she was paid less for work requiring "substantially the same responsibility").[26]

Grant relies on *Cicalese v. Univ. of Texas Med. Branch* to support her contention that pointing to comparators with the same job title suffices to allege discrimination at the pleading stage. But that case demonstrates why Grant's complaint falls short. 924 F.3d 762 (5th Cir. 2019). In *Cicalese*, the Fifth Circuit reversed the district court's dismissal of the plaintiffs' complaint, which alleged discrimination based on national original. *Id.* at 768. The court faulted the district court for, *inter alia*, "scrutinizing whether Appellants' fellow employees were really 'similarly situated,'" at the motion to dismiss stage. *Id.* According to Grant, dismissal of her complaint at this stage would suffer the same fault.

The plaintiffs in *Cicalese*, however, had also alleged their supervisors had made "derogatory statements about Italians." *Id.* Here, by contrast, Grant not only fails to allege *any* facts supporting the contention that the comparator social workers were, in fact, similarly situated beyond mere job title; she also fails to point to any other facts that could support an inference of racially biased motivation. Grant's Complaint therefore falls short of alleging sufficient "facts, direct or circumstantial, that would suggest [the employer's] actions were based on [the plaintiff's] race . . . or

---

[26] The Court reiterates that, at the motion to dismiss stage, Grant need not prove a *prima facie* case of discrimination. *See id.* But as her complaint stands now, it is not possible to infer from the facts alleged whether Grant was discriminated against "because of" her race, in part because it is unknown whether Grant was, in fact, similarly situated to her cited comparators beyond mere job title.

that [the employer] treated similarly situated employees of other races . . . more favorably." *Raj*, 714 F.3d at 326, 331; *see e.g., id.* (affirming dismissal of complaint where plaintiff alleged his "salary was the lowest of all similarly-qualified professors throughout his employment" but failed to allege "that LSU treated similarly situated employees of other races or national origin more favorably"); *Thomas v. Dallas Indep. Sch. Dist.*, 2024 WL 2874367, at *5 (5th Cir. June 7, 2024) (holding that plaintiff adequately pleaded an age discrimination claim where the plaintiff pleaded she "had significantly more experience . . . than many of the candidates who were hired"); *Blanchard v. Tulane Univ.*, 636 F. Supp. 3d 642, 658 (E.D. La. 2022) (denying motion to dismiss where plaintiff alleged his circumstances were "nearly identical" to comparator and yet still received unequal pay). Accordingly, because her Complaint fails to state a claim under Title VII, the claim is dismissed.[27]

## B. Section 1981 Racial Discrimination Claim

---

[27] In her Opposition to Defendant's motion to dismiss, Grant asserts that she also brings a claim for racial discrimination under the Louisiana Employment Discrimination Act, La. R.S.S. §23301 *et. seq.* ("LEDL"). ECF No. 14 at 1. Her Complaint, however, only appears to plead a claim for disability discrimination under the LEDL. *See id.* ¶¶ 75-78 (pleading "Count 5: Louisiana Employment Discrimination Law based on Disability LA. R.S. § 23:301 et. Seq" and asserting a claim for "discrimination based on disability, retaliation, failure to accommodate, and hostile work environment/harassment"). The LEDL prohibits an employer from discriminating against an individual based on his race, color, religion, sex, age or national origin and is similar in scope to Title VII's prohibitions against discrimination. Federal courts therefore look to Title VII jurisprudence to interpret the LEDL. *Baker v. Fedex Ground Package Sys.*, 278 F. App'x. 322, 327 (5th Cir.2008) ("We look to federal employment discrimination jurisprudence when interpreting Louisiana's anti-discrimination laws.") (citing *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448 (5th Cir. 2002)). To the extent Grant did intend to plead a racial discrimination claim under the LEDL, that claim also fails for the same reason as the Title VII claim. *See id.*

Grant also brings a claim against the School Board under 42 U.S.C. § 1981, via § 1983, for racial discrimination by denying her equal pay. *See Encalarade v. New Orleans Ctr. for Creative Arts/Riverfront*, 2010 WL 2854275, at *1 (E.D. La. July 19, 2010) (holding because § 1981 does not provide a separate cause of action against state actors, a plaintiff "must assert a cause of action against state actors under § 1983 to remedy violations of civil rights under § 1981") (quoting *Oden v. Oktibbeha County, Miss.,* 246 F.3d 458, 462–63 (5th Cir. 2001)). As with the Title VII claim, Grant alleges that Defendants violated Section 1981 by denying her equal pay and requiring her to take on extra duties as compared to her Caucasian colleagues.[28] For the following reasons, the Court finds that Grant fails to plead a claim under Section 1981.

Section 1981 "provides a remedy for racial discrimination in contracting." *Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 325 (5th Cir. 2020). "To state a claim of discrimination under Section 1981, 'a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute.'" *Sherrod v. United Way Worldwide*, 821 F. App'x 311, 316 (5th Cir. 2020) (quoting *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994)). Because Section 1981 claims of racial

---

[28] ECF No. 1 ¶ 55.

16

discrimination are "governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII," courts typically rely on Title VII cases when analyzing Section 1981 claims. *Mendoza v. Helicopter*, 548 F. App'x 127, 128 (5th Cir. 2013) (relying on Title VII caselaw to analyze Section 1981 claim).[29]

Although Section 1981 and Title VII claims are similar, a plaintiff pleading a violation of Section 1981 is also required to show that race was the but-for cause of the discrimination. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 333 (2020). This means the plaintiff must plead that "but for race, [she] would not have suffered the loss of a legally protected right," and her complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face under the but-for causation standard." *Id.* at 341 (citation omitted). "Under this standard, a plaintiff must demonstrate that, but for the defendant's unlawful conduct, [her] alleged injury would not have occurred." *Id.* at 331.

The Court has already found that Grant's Title VII claim of unequal pay due to racial discrimination fails. For the same reasons, and because the plaintiff must plead that race was the but-for cause of her unequal treatment when bringing a Section 1981 racial discrimination claim, the Court similarly finds that Grant's

---

[29] Unlike Title VII, however, Section 1981 does not have an exhaustion requirement, and is subject to a four-year statute of limitations. *See Shaw v. Ciox Health, LLC*, 2020 WL 12846622, at *4 (E.D. La. July 8, 2020); 28 U.S.C. § 1658; *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004).

Complaint fails to state a claim under Section 1981. Accordingly, that claim is dismissed.

### C. Title VII Retaliation Claim

Defendant next challenges Grant's Title VII retaliation claim. According to the School Board, Grant failed to adequately allege that an adverse employment action occurred against her as a result of her engaging in a protected activity. The Court agrees with the School Board for the following reasons.

The Court first notes that several of Grant's alleged instances of retaliation fall before September 10, 2022. As discussed, the parties agree that under the 300-day limitations period, any alleged retaliatory acts under Title VII that Grant experienced before September 10, 2022 fall outside the actionable window and are time-barred.[30] *See Conner*, 247 F. App'x at 481 (300-day period to file an EEOC charge in Louisiana); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (holding that "each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" and therefore is subject to the filing period deadline). Accordingly, as to the Title VII claims, the Court considers only claims of retaliation that occurred after September 10, 2022.[31]

---

[30] ECF No. 14 at 3 (Pl. Opp.); ECF No. 15 at 1-2 (Def. Reply).

[31] To the extent Grant also brings an LEDL retaliation claim, that claim is "subject to a prescriptive period of one year," which is only suspended (for up to six months) "during the pendency of any administrative review or investigation of the claim conducted by [the EEOC] or the Louisiana Commission on Human Rights." La. R. S. § 23:303(D); *see also* ECF No. 1 ¶¶ 75-78 (alleging the School Board is liable to Grant "under the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. § 23:301 *et. seq.* as described in the preceding paragraphs for discrimination based on disability,

To survive a Rule 12(b)(6) motion, a plaintiff alleging Title VII retaliation must plead facts showing: "(1) that the plaintiff engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action." *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (internal quotation marks omitted). At this stage, a plaintiff need not establish a *prima facie* case of retaliation, but she "'must plead sufficient facts on all of the ultimate elements to make her case plausible.'" *Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244 (5th Cir. 2017) (quoting *Chhim v. Univ. of Texas*, 836 F.3d 467, 470 (5th Cir. 2016)).

Beginning with the second element, Grant sufficiently pleads facts to show she experienced "adverse employment action[s]" after September 2022. *Banks*, 320 F.3d at 575. She alleges, for example, that she was denied proper medical leave for assault/battery by a student and lost health and retirement benefits as a result.[32] She also alleges that, after complaining to HR of Schaff's discriminatory treatment towards her, Schaff assigned more work to Grant than to her Caucasian colleagues, and that Schaff told a student who had injured Grant that he would try to get her

---

retaliation, failure to accommodate, and hostile work environment/harassment.") The LEDL's prescriptive period runs from the date that "the conduct occurred/abated." *Jones v. City of Monroe*, 2019 WL 5488603, at *10 (W.D. La. Oct. 8, 2019). Here, Grant filed her Complaint on November 6, 2024. The parties agree that the Court can consider Grant's claims that occurred one year and six months before Grant filed her complaint in this court. The parties thus agree the Court can only consider Grant's claims under the LEDL that occurred on or after May 6, 2023. Under the facts alleged here, Grant's LEDL claim therefore fails for the same reasons as her Title VII retaliation claim.

[32] *Id.* ¶¶ 35-38.

19

fired.[33] These actions would dissuade a reasonable worker from complaining about discriminatory treatment. *See Johnson v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 460 (5th Cir. 2024) (holding that an adverse action for purposes of Title VII retaliation "need only be one that a reasonable employee would have found 'materially adverse' meaning it might have dissuaded a reasonable worker from making or supporting protected activity") (cleaned up); *see also Martinez v. Univ. of Texas at Austin*, 2023 WL 6518165, at *4 (5th Cir. Oct. 5, 2023) ("An employment decision tends to be materially adverse when it changes job title, grade, hours, salary, or benefits or effects a diminution in prestige or change in standing among . . . co-workers.") (cleaned up).

Grant's allegations fall short, however, on the first and third elements of a retaliation claim. It is true that a protected activity under Title VII can consist of "'oppos[ing] any practice made an unlawful employment practice by [Title VII].'" *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016) (quoting 42 U.S.C. § 2000e–3(a)). The complained-of employment practice does not need to be in fact unlawful so long as the employee "demonstrate[s] that she had at least a 'reasonable belief' that the practices she opposed were unlawful." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (quoting *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981)). Thus, internally complaining about an employment

---

[33] *Id.* ¶¶ 41-44.

20

practice—as Grant did here—may constitute protected activity, as long as the complainant "reasonably believed the employment practice to be unlawful." *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 242 (5th Cir. 2016) (finding that "[t]he statute, case law, and interest in uniformity and ease of application support applying the 'reasonable belief' standard to retaliation cases involving both proactive and reactive opposition").

Grant alleges she made multiple internal complaints regarding her unequal pay and her heavier caseload as compared to her Caucasian co-workers. For example, Grant alleges she "reach[ed] out to HR, Payroll and her superiors about her unequal pay while out on medical leave," and that she emailed HR in February 2023 to address the disparity in her workload as compared to a Caucasian colleague.[34] Even though the Court has found that Grant's allegations did not suffice to state a claim for discrimination under Title VII or Section 1983, Grant has sufficiently pled that she had a "reasonable belief" she was being discriminated against due to race in receiving lower pay than her Caucasian colleagues. *Rite Way*, 819 F.3d at 240. In substance, these allegations satisfy the first prong of the pleading requirement, where a protected activity includes "oppos[ing] a practice made an unlawful employment practice by Title VII." *Id.* (cleaned up); *see also Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 914-15 (5th Cir. 2008) ("An informal complaint to a supervisor

---

[34] *Id.* ¶¶ 40-41.

21

regarding an unlawful employment practice may satisfy the opposition requirement of a Title VII retaliation claim.").

But Grant's medical leave took place from March 2022 through January 25, 2023, and so included the time-barred period.[35] Although Grant alleges she complained of unequal pay "while out on medical leave," she does not specify if any of these complaints occurred after September 10, 2022. The Complaint therefore fails to allege that Grant only engaged in a protected activity during the period that is not time-barred. Accordingly, that claim is dismissed.

### D. Title VII Hostile Work Environment Claim

Although not enumerated as a separate count in her Complaint, Grant argues in her opposition that she also brings a hostile work environment claim under both Title VII and the LEDL. Assuming that Grant did intend to state a hostile work environment claim under Title VII, the Court finds that those claims also fail.

To prevail on a hostile work environment claim under both Title VII and the LEDL, a plaintiff must prove that: "(1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in

---

[35] *Id.* ¶¶ 29-30.

question and failed to take prompt remedial action." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

Grant's Complaint fails on the third element for the same reasons her Title VII claim fail: she fails to allege adequate facts to support an inference that any perceived harassment was "based on race." Although she alleges many facts demonstrating that her supervisor, Schaff, may have behaved unfairly towards her—and without determining that those allegations rise to the level of harassment—none of Grant's allegations points to a purported harassment that was racially motivated. *See, e.g.*, *Decou-Snowton v. Par.*, 2022 WL 4245492, at \*7 (E.D. La. Sept. 15, 2022) ("No matter how toxic or unpleasant the environment was, Snowton points to no comments or actions that were based on race or gender, thus, nothing sustains a race- or gender-based hostile work environment claim.") (citing *Baker v. FedEx Ground Package System, Inc.*, 278 F. App'x. 322, 329 (5th Cir. 2008) ("The phrases 'fired girl walking' and 'stupid' are not 'based on race' and, thereby, do not sustain a race-based hostile work environment claim.)). Accordingly, the motion to dismiss Grant's hostile work environment claim is granted and the claim is dismissed.

### E. ADA and LEDL Disability Discrimination Claims

Finally, Plaintiff Grant also brings claims against the School Board for violation of her rights under the ADA and LEDL. Grant alleges she experienced disability discrimination because she did not receive correct "leave coding" for the medical leave she took after she was injured by students in March 2022 and April

23

2023. Because the LEDL is "patterned" after the ADA, the results of the Court's analysis under either statute "must, necessarily, be the same." *Crain v. Schlumberger Tech. Co.*, 187 F. Supp. 3d 732, 738 (E.D. La. 2016) (quoting *Mincey v. Dow Chem. Co.*, 217 F. Supp. 2d 737, 742 (M.D. La. 2002)).

### i.    *Time Barred Claims*

The Court once again notes that many of Plaintiff's claims are time-barred. "Before a plaintiff may file her ADA claim in federal court, she must exhaust her administrative remedies." *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017). "Specifically, the plaintiff must file a charge of discrimination with the EEOC within . . . 300 days if the charge is filed with a state or local agency . . . ." *Id.* (citing 42 U.S.C. § 2000e–5(e)(1)). The parties again agree that under the 300-day limitations period, any alleged discriminatory or retaliatory acts under the ADA that Grant experienced before September 10, 2022 fall outside the actionable window and are time-barred.[36] *See, e.g.*, *Smith v. Gen. Motors, L.L.C.*, 2025 WL 1693524, at *3 (5th Cir. June 17, 2025) ("Almost all of the acts alleged in Smith's Second Amended Complaint occurred before February 22, 2022 and are time barred.")

Similarly, a claim under the LEDL is "subject to a prescriptive period of one year," which is only suspended (for up to six months) "during the pendency of any administrative review or investigation of the claim conducted by [the EEOC] or the

---

[36] ECF No. 14 at 3 (Pl. Opp.); ECF No. 15 at 1-2 (Def. Reply).

24

Louisiana Commission on Human Rights." La. R. S. § 23:303(D). The LEDL's prescriptive period runs from the date that "the conduct occurred/abated." *Jones v. City of Monroe*, 2019 WL 5488603, at \*10 (W.D. La. Oct. 8, 2019). Here, Grant filed her Complaint on November 6, 2024. The parties agree that the Court can consider Grant's claims that occurred one year and six months before Grant filed her complaint in this court. The parties thus agree the Court can only consider Grant's claims under the LEDL that occurred on or after May 6, 2023.[37]

### ii.    *Disability Discrimination Claims*

The ADA prohibits an employer from discriminating against a "qualified individual with a disability on the basis of that disability." 42 U.S.C. § 12112(a). A plaintiff states a *prima facie* case of discrimination by showing: "(1) that [s]he has a disability; (2) that [s]he was qualified for the job; [and] (3) that [s]he was subject to an adverse employment decision on account of his disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (internal quotation marks and citation omitted). The plaintiff does not need to "submit evidence to establish a prima facie case of discrimination at th[e motion to dismiss] stage," but she does need to "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [her] case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam) (citations omitted).

---

[37] *See* ECF No. 14 at 5; ECF No. 15 at 3.

Here, Grant fails to allege facts sufficient to state a plausible claim for discrimination. For one, she fails to allege that she has a disability within the meaning of the ADA. *See LHC Grp*, 773 F.3d at 697. An individual is considered disabled under the ADA if he or she (1) has "a physical or mental impairment that substantially limits one or more major life activities"; (2) has "a record of such impairment"; or (3) is "regarded as having such impairment." 42 U.S.C. § 12102(1). Grant alleges that a student injured her hand in April 2023 and recites that the injury "limited her major life activities while recovering from the injuries and surgeries." But she does not specify whether any injury persisted after she returned from medical leave six weeks later or allege facts supporting the conclusion that her "life activities" were substantially impaired. These deficiencies doom her claim. *See Mora v. Univ. of Texas Sw. Med. Ctr.*, 469 F. App'x 295, 297 (5th Cir. 2012) (holding that the plaintiff's failure to specify which of her "life activities" were substantially limited was "fatal to stating a valid claim for relief").

Moreover, Grant's Complaint also fails to allege facts that would establish she was "subject to an adverse employment decision on account of [her] disability." *LHC Grp., Inc.*, 773 F.3d at 697. Although Grant alleges the School Board erroneously failed to place her on "assault leave" following her hand injury caused by a student in April 2023, she does not allege that she experienced any particular adverse employment decision "on account of" her disability. *Id.* Indeed, as the School Board points out, it is difficult to see how affording Grant medical leave (even if she alleges

26

it was erroneously granted without pay) could constitute discrimination on account of her disability. Accordingly, the Court dismisses Grant's ADA and LEDL claims.

### F. Leave to Amend

Grant requests leave to amend her complaint.[38] The Court will "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). In determining whether to grant leave to amend, the Court considers factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Grant has not previously amended her Complaint and it is not clear that amendment would be futile. Nor do any of the other factors appear to apply. The Court therefore grants Grant leave amend her Complaint, if she chooses, to remedy the deficiencies outlined here.

Accordingly,

**IT IS ORDERED** that Defendant St. John the Baptist Parish School Board's motion[39] to dismiss the claims against it is **GRANTED**. Plaintiff Ellen Grant's claims are **DISMISSED WITHOUT PREJUDICE.** Plaintiff has 30 days to amend her complaint to remedy the deficiencies in her pleading. Failure to timely amend will result in dismissal of the complaint with prejudice.

---

[38] ECF No. 14.
[39] ECF No. 8.

27

New Orleans, Louisiana, this 2nd day of July, 2026.

_____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE